Filed 8/17/21  P. v. Porter CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SUMPTER LOVELLE PORTER,<br><br>Defendant and Appellant. | C093178<br><br>(Super. Ct. No. 20FE008156) |

Appointed counsel for defendant Sumpter Lovelle Porter filed an opening brief setting forth the facts of the case and asking this court to review the record to determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  After examining the record, we find no arguable error that would result in a disposition more favorable to defendant and affirm the judgment.

1

FACTS AND HISTORY OF THE PROCEEDINGS

In May 2020, Kelly K. was 12 weeks pregnant and working as a program attendant at the Salvation Army in Sacramento. Defendant, a homeless veteran, was a client. Defendant often challenged Kelly when she asked to check his bags before allowing him into the building.

On May 17, 2020, Kelly was in her office, behind a window and a locked door, talking on the telephone. Defendant approached her and asked to be let into the building. Kelly told defendant he would have to wait. Defendant "got mad and yelled" at Kelly to "get off the phone, that he's more important." Kelly again told him he would have to wait.

Defendant called Kelly a "stupid white bitch" and told her that if it was not her "fucking boss on the phone," she needed to "hang up and deal with him." He said, "if he could he would grab [her] through the glass by [her] hair . . . and beat [her] . . . " Kelly told defendant he was being inappropriate; defendant said he "didn't fucking care." Kelly told defendant if he did not calm down, he would not be allowed back inside the building that day.

Kelly called her supervisor, Christina K., and put her on speakerphone. Christina heard defendant say, " 'You fucking bitch. I'm going to fucking kill you. This is all your fault. You fucking bitch.' " Kelly sounded scared; Christina told her to call the police and ask them to escort defendant off the premises.

After calling the police, Kelly called Christina back. Christina could still hear defendant yelling at Kelly, and she heard what sounded like something hitting a wall or window. Christina again heard defendant say to Kelly, "I am going to kill you, you fucking bitch," then she heard a loud clapping sound. Christina told Kelly to stay inside the locked office until the police arrived.

At Christina's direction, Kelly told defendant to leave and come back the next day and talk to Christina. Rather than leave, defendant ran to a back gate and began asking other clients "to either let him in or to get his stuff for him." When they refused to help defendant, "he got agitated again." One of those clients told Kelly defendant said he would wait for her; Kelly began to panic.

Next, Kelly heard crashing sounds from the kitchen area and a kitchen worker calling her name. She responded and the kitchen worker told her defendant had thrown a chair and small table at the door. It had been 20 minutes since her first call to the police and defendant was now becoming physically violent. Kelly was becoming more frightened, so she called the police again and defendant left.

The police found defendant and brought him back to the building. Kelly told them there had been a disagreement and "some threats." She asked for a no-trespassing order, which the police said they would serve on defendant; then they took defendant away.

The next day, Kelly learned from her coworker, Patronella M., that after being served with a no-trespassing order, defendant returned to the building and threatened to harm Kelly's unborn child. Kelly also saw defendant walking toward the Salvation Army building carrying an axe. Defendant approached the gate to enter the facilities but another of the Salvation Army clients stopped him. Defendant appeared "agitated"; Kelly saw the two men "cussing at each other" and getting "in each other's faces." Kelly was "really scared."

After being stopped at the gate, defendant left, but he returned and walked inside the lobby. Kelly told him he had to leave because they had a no-trespassing order. Defendant called her a "stupid white bitch" and said he was "going to be waiting" for her. He also said he would beat her "until [she] lost [her] baby. . . . [a]nd then he'd beat [her] until [she] died." Scared, Kelly again called the police.

After Kelly called the police, defendant left, and she locked the lobby. But, Kelly could hear defendant at the back gate, talking to other clients, and she could hear him

3

leaving and coming back. Because he threatened to wait for her, Kelly continued to be afraid. At the end of her shift, some of the other clients escorted Kelly to her car.

Defendant was subsequently arrested and ultimately the People charged him with making criminal threats. The People also alleged defendant was previously convicted of a strike offense. Defendant pleaded not guilty and went to trial.

At trial, defendant argued he had a brief, sexual relationship with Kelly and she was angry with him for ending that relationship. On the days in question, defendant acknowledged calling Kelly a "white bitch, dumb bitch," but denied ever threatening Kelly or her unborn child.

The jury found defendant guilty as charged and later found true the allegation that defendant was previously convicted of a serious or violent felony. The trial court denied defendant's motion to strike his prior conviction and sentenced him to an aggregate term of six years in state prison. The court awarded defendant 369 days of custody credit and ordered him to pay various fines and fees.

Defendant filed a timely notice of appeal.

## DISCUSSION

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief setting forth the facts of the case and requesting that this court review the record to determine whether there are any arguable issues on appeal. (*People v. Wende, supra*, 25 Cal.3d 436.) Defendant was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days elapsed, and we received no communication from defendant.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

4

DISPOSITION

The judgment is affirmed.

                                        _____

                                        HULL, J.

We concur:

_____

BLEASE, Acting P. J.

_____

KRAUSE, J.